IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DOMINIQUE ANDERSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:21-CV-00364 -MAB |
| | ) |
| WEXFORD HEALTH SOURCES, INC. | ) |
| ET AL., | ) |
| | ) |
| Defendants. | |

# MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

This matter is before the Court on Defendant Kimberly Birch's motion for summary judgment on exhaustion of administrative remedies. For the reasons set forth below, the motion is GRANTED.

### PROCEDURAL BACKGROUND

Plaintiff filed this civil rights action pursuant to 42 U.S.C. § 1983 on April 6, 2021, for deprivations of his constitutional rights while incarcerated at Vienna Correctional Center ("Vienna") (Docs. 1, 8). Plaintiff alleges that Defendant Birch was deliberately indifferent to his serious medical needs, specifically chronic, severe pain in his upper right side and chest (Doc. 8, p. 3).

The Court conducted a threshold review of the first amended complaint, pursuant to 28 U.S.C. § 1915A, and allowed Plaintiff to proceed on four counts against Defendants:

> **Count 1:** Eighth Amendment claim against Defendant Birch for exhibiting deliberate indifference to Plaintiff's chronic, severe pain in his upper right side and chest in 2018 and 2019;

> **Count 2:** Eighth Amendment claim against Defendant Stevens for exhibiting deliberate indifference to Plaintiff's chronic, severe pain in his upper right side and chest in 2020;
>
> **Count 3:** Eighth Amendment claim against Defendant Caldwell for exhibiting deliberate indifference to Plaintiff's chronic, severe pain in his upper right side and chest and the lumps in his upper torso in 2020;
>
> **Count 4:** Eighth Amendment claim against Defendant Myers for exhibiting deliberate indifference to Plaintiff's chronic, severe pain in his upper right side and chest and the growths on his organs in 2021.

(Doc. 8, p. 3).

Defendant Birch filed her motion for summary judgment on exhaustion of administrative remedies on September 16, 2021 (Docs. 28, 29). Defendants Myers, Caldwell, and Stevens did not move for summary judgment on exhaustion. Plaintiff filed his response on November 8, 2021 (Doc. 36). Having closely reviewed the briefs and evidence submitted by both parties, the Court determined there were no disputed issues of material fact and therefore no hearing pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008) was necessary.

### FACTUAL BACKGROUND

Plaintiff is an inmate within the Illinois Department of Corrections ("IDOC") and is currently incarcerated at Vienna, where the events at issue also took place (Doc. 8).

Plaintiff's complaint details that Defendant Birch first treated Plaintiff for high blood pressure in 2018 when he was first incarcerated at Vienna (*Id.* at p. 1). During these initial visits, Plaintiff told Defendant Birch that he had ongoing severe pain in his upper right side and chest. Beginning in January 2019, Plaintiff saw Defendant Birch specifically

for this pain in his upper right side and chest (*Id.* at pp. 1-2). Plaintiff sought treatment for this pain at the Vienna healthcare unit many times over the course of three years (*Id.* at p. 2). Eventually, Defendant Birch ordered an X-ray and told Plaintiff that everything was fine, despite Plaintiff's reports of his symptoms persisting. *Id.* Plaintiff requested a CT scan or MRI to determine the cause of his pain, but Defendant Birch told him it was not necessary.

Plaintiff continually sought treatment for the pain in his upper right side and chest. As time progressed, Plaintiff developed hard lumps in his upper torso. Finally, Plaintiff was taken for a CT scan on February 8, 2021. *Id.* Plaintiff saw Defendant Myers on February 15, 2021, who told him the CT scan revealed growths on Plaintiff's organs. *Id.*

In support of her motion for summary judgment on the issue of exhaustion, Defendant Birch submitted both Plaintiff's records from Vienna, as well as his records from the Administrative Review Board ("ARB").

I.     Plaintiff's Cumulative Counseling Summary at Vienna

Plaintiff's cumulative counseling summary indicates that at various times throughout his time at Vienna, he filed grievances regarding his medical care. For example, his cumulative counseling summary shows that on February 22, 2018, a second-level grievance regarding Plaintiff's medical treatment was received, assigned to a grievance officer, and completed the same day before being forwarded to a clinical services supervisor (Doc. 29-3, p. 6). This grievance was labeled as 18-061. *Id.* A full copy of this grievance does not appear to be in the record, though.

A second grievance, labeled 08-07-020, was received on July 13, 2020 by the grievance office (*Id.* at p. 4). The cumulative counseling entry indicates that the CAO agreed this grievance was an emergency and expedited it for grievance review the same day. *Id.* The August 4, 2020 entry indicates that Plaintiff was sent the response to this grievance that day. It looks like on August 12, 2020, Plaintiff tried to appeal this grievance internally. Plaintiff's office coordinator indicated in a note: "Sent offender a note along with grievance response stating if he wishes to appeal the response, he needs to send to the ARB." *Id.*

II.     Administrative Review Board's Logs

Plaintiff's IGRV log, which documents the grievances received by the ARB, includes four grievances dated as received by the ARB on September 7, 2020 (Grievance 08-07-020); February 11, 2021 (Grievance 79-09-020); March 12, 2021 (Grievance 48-10-020); and April 1, 2021 (Grievance 41-02-021) (Doc. 29-1, p. 9). The four grievances are attached to the ARB's records and are detailed below:

A. Grievance 41-02-021

Grievance 41-02-021 was written on February 15, 2021, but received by the ARB on April 1, 2021 (Doc. 29-1, p. 10). In the grievance, Plaintiff details issues with a medical visit to Defendant Myers on February 15, 2021 (*Id.* at p. 12). The grievance was ultimately denied by the ARB because the ARB found that the issues Plaintiff complained of were being appropriately addressed by the facility (*Id.* at p. 10). Prior to being denied, this grievance was deemed as an emergency and expedited at the institutional level (*Id.* at pp. 18-19).

B. Grievance 48-10-020

Grievance 48-10-020 was written on October 19, 2020 and received by the ARB on December 14, 2020 (*Id.* at p. 14). In this grievance, Plaintiff outlines that there were delays in his request to receive a CT scan, and he believed these issues were due to inaccurate information being provided to the healthcare unit workers (*Id.* at p. 16). The ARB ultimately denied this grievance as moot, since through the grievance process, Plaintiff ended up receiving a CT scan and the results were discussed with him on February 10, 2021 and February 15, 2021, which the ARB noted in its response dated March 12, 2021. (*Id.* at p. 14).

C. Grievance 79-09-020

Grievance 79-09-020 was written on September 21, 2020 and received by the ARB on October 22, 2020 (*Id.* at p. 22). It was returned to Plaintiff from the ARB on February 11, 2021. *Id.* In this grievance, Plaintiff describes seeing a male doctor in September 2020 for "overwhelming pain in [his] left wrist and the upper right since of my body and chest" (*Id.* at p. 24). He explains that these issues have been ongoing for "well over a year." *Id.* He further explains that previously, he was seen by Defendant Birch. Plaintiff details that Defendant Birch ordered X-rays and explained that they "were fine," but Plaintiff continued to make "her aware that [he] was still in great pain" (*Id.* at p. 25). He asked Defendant Birch for a referral for a CT-scan or an MRI and explained that while he was referred for a CT scan, it was eventually denied. *Id.* Plaintiff details that he continued to complain to Defendant Birch, who told him "she would see me in a couple of weeks, but

I was never called over to see her again." *Id.* Plaintiff also notes issues with a bunk assignment in this grievance.

This grievance was then sent through the chain of command at Vienna, and was reviewed and signed by the Chief Administrative Officer ("CAO") on October 13, 2020 (*Id.* at p. 23). It was stamped as received by the ARB on October 22, 2020, and was reviewed by the ARB on February 11, 2021 (Doc. 29-1, p. 22). This grievance was denied as moot by the ARB, as the ARB noted, "Per HCU, offender had a CT Chest on 2/8/21, and was issued a low bunk permit x 6 months on 2/10/21" (*Id.* at p. 22).

D. Grievance 08-07-020

Grievance 08-07-020 was written by Plaintiff on July 4, 2020 and marked as received by the ARB on August 31, 2020 (*Id.* at p. 27). In this grievance, Plaintiff details the pain he was experiencing on the right side of his chest, and states that he has been experiencing it for "about 10 months" (*Id.* at p. 29). He requests a referral to an "outside" doctor so that they can determine the source of his pain (*Id.* at pp. 30-31). Plaintiff marked this grievance as an emergency. It was reviewed by the grievance officer on July 17, 2020 and also deemed an emergency (*Id.* at p. 28). In the grievance officer's notes, the grievance officer noted that Plaintiff saw Defendant Birch on June 26, 2020 and was scheduled for a follow-up appointment with Defendant Birch in two weeks' time (*Id. at* p. 28). Ultimately, since Plaintiff was being seen by Defendant Birch, the grievance officer denied this grievance. The CAO reviewed the grievance and concurred with the grievance officer decision to deny the grievance. The CAO signed and dated the grievance on July 22, 2020. *Id.*

The grievance packet is stamped as "received" by the ARB on August 31, 2020. *Id.* The ARB denied this grievance without reviewing it, as it was received more than 30 days after the date of the CAO's signature (*Id.* at p. 27). The ARB signed this grievance on September 17, 2020. *Id.*

## LEGAL STANDARDS

*Summary Judgment*

Summary judgment is proper only if the movant shows that there is no genuine issue as to any material fact and they are entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). In making that determination, the court must view the evidence in the light most favorable to, and draw all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted). Courts generally cannot resolve factual disputes on a motion for summary judgment. *E.g., Tolan v. Cotton*, 572 U.S. 650, 656, 134 S. Ct. 1861, 1866, 188 L. Ed. 2d 895 (2014) ("[A] judge's function at summary judgment is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.") (internal quotation marks and citation omitted). However, when the motion for summary judgment pertains to a prisoner's failure to exhaust, the Seventh Circuit has instructed courts to conduct an evidentiary hearing and resolve contested issues of fact regarding a prisoner's efforts to exhaust. *Wagoner v. Lemmon*, 778 F.3d 586, 590 (7th Cir. 2015) (citing *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008)). *Accord Roberts v. Neal*, 745 F.3d 232, 234 (7th Cir. 2014). However, where there is no disputed issue of fact, no hearing is necessary.

*Exhaustion*

The Prison Litigation Reform Act ("PLRA") provides that a prisoner may not bring a lawsuit about prison conditions unless and until he has exhausted all available administrative remedies. 42 U.S.C. § 1997e(a); *Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011)). Exhaustion is an affirmative defense, which the defendants bear the burden of proving. *Pavey*, 663 F.3d at 903 (citations omitted).

In order for a prisoner to properly exhaust his or her administrative remedies, the prisoner must "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozzo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002); *see also Woodford v. Ngo*, 548 U.S. 81, 90 (2006). As an inmate in the IDOC, Plaintiff was required to follow the grievance process outlined in the Illinois Administrative Code. ILL. ADMIN. CODE, tit. 20, § 504.800, *et seq.* (2017). The regulations first require an inmate to attempt to resolve the dispute through his or her counselor. *Id.* at § 504.810(a).[1] If the counselor is unable to resolve the grievance, it is sent to the grievance officer, who reports his or her findings and recommendations in writing to the Chief Administrative Officer (the warden). *Id. at* § 504.830(e). The warden then provides the inmate with a written decision on the grievance. *Id.* If the inmate is not satisfied with the warden's decision, he or she has thirty days to appeal to the Director of the IDOC by sending the grievance to the ARB. *Id.* at § 504.850(a). The ARB submits a written report of its findings and recommendations to the Director, who then makes a final determination "within six

---

[1] There are exceptions to this rule. 20 ILL. ADMIN. CODE § 504.810(a), 504.870 (2017).

months after receipt of the appealed grievance, when reasonably feasible under the circumstances." *Id.* at § 504.850(d), (e).

An inmate may also request that a grievance be handled as an emergency by forwarding the grievance directly to the warden. 20 ILL. ADMIN. CODE § 504.840 (2017). If the warden determines that "there is a substantial risk of imminent personal injury or other serious or irreparable harm to the [inmate]," then the grievance is handled on an emergency basis, meaning the warden will expedite processing of the grievance and respond to the inmate, indicating what action shall be or has been taken. *Id.* On the other hand, if the warden determines that the grievance should not be handled on an emergency basis, the inmate is notified in writing that he "may resubmit the grievance as non-emergent, in accordance with the standard grievance process." *Id.*

Though the Seventh Circuit requires strict adherence to the exhaustion requirement, *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006), an inmate is required to exhaust only those administrative remedies that are available to him. 42 U.S.C. § 1997e(a). Administrative remedies become "unavailable" to prisoners when prison officials fail to respond to a properly filed grievance or when prison officials' "affirmative misconduct" thwarts a prisoner from exhausting. *E.g., Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002); *Dole*, 438 F.3d at 809.

## DISCUSSION

Under the Prison Litigation Reform Act ("PLRA"), all prison inmates bringing an action under 42 U.S.C. §1983 must first exhaust all administrative remedies. *See* 42 U.S.C §1997e (a); *Pavey v. Conley*, 544 F.3d, 739, 740 (7th Cir. 2008). Defendant Birch argues that

there are no grievances in the record that were fully exhausted that name her or describe her actions (Doc. 29). Defendant Birch details that the claim against her is for her actions in 2018 and 2019, but there are no grievances in the record from that time. Defendant's counsel requested Plaintiff's ARB records dating back to 2017 and the first grievance in the record is from 2020 (Doc. 29, p. 6). Even though Defendant Birch last saw Plaintiff for care on June 26, 2020, the grievances in the record (overall) do not relate back to events that took place in 2018 and 2019. *Id.* Therefore, Plaintiff's claim against Defendant Birch was never fully exhausted. In particular, Defendant Birch says that two grievances—Grievance 79-09-020, dated September 21, 2020, and Grievance 08-07-020, dated July 4, 2020—are not fully exhausted for Plaintiff's failure to follow the procedures as laid out by the PLRA. Therefore, she should be dismissed without prejudice. *Id.*

Plaintiff disagrees, and explains that he sent the relevant grievances to the ARB and did not file this lawsuit until he had received notice from the ARB; therefore, he exhausted his claims prior to filing suit, as required by the PLRA (Doc. 36, pp. 2-3). Attached to his response in opposition to Defendant Birch's motion for summary judgment, Plaintiff includes copies of his July 4, 2020 and September 21, 2020 grievances, as well as the addition of his October 19, 2020 grievance (*Id.* at pp. 4-15). Plaintiff argues that these three grievances fully exhaust his claims against Defendant Birch.

The only count in Plaintiff's complaint that is against Defendant Birch is an Eighth Amendment claim for exhibiting deliberate indifference to Plaintiff's chronic, severe pain in his upper right side and chest in 2018 and 2019 (Doc. 8, p. 3). After reviewing the

record, the Court agrees that there are no grievances from 2018 and 2019 that are fully exhausted and relate to Defendant Birch. Therefore, her motion will be granted.

The Court is cognizant that Plaintiff is complaining of a chronic, continuing condition that dates back to 2018. "In order to exhaust their remedies, prisoners need not file multiple, successive grievances raising the same issue (such as prison conditions or policies) if the objectionable condition is continuing" so long as the *first* grievance gave the prison "notice of, and an opportunity to correct, [the] problem." *Turley v. Rednour*, 729 F.3d 645, 650 (7th Cir. 2013) (parenthetical in original) (citations omitted). "Separate complaints about particular incidents are only required if the underlying facts or the complaints are different." *Id.*

Because the claim against Defendant Birch pertains to conduct in 2018 and 2019, the Court begins with the earliest grievance in the record that is, arguably, fully exhausted. And in the Court's review of the record, this is Plaintiff's July 4, 2020 grievance (08-07-020) (Doc. 29-1, pp. 27-30).[2] In the grievance, Plaintiff says that he has been experiencing pain on the right side of his chest for "about 10 months" (*Id.* at p. 29). He requests a referral to an "outside" doctor so that they can determine the source of his pain (*Id.* at pp. 30-31). Plaintiff marked this grievance as an emergency. It was reviewed by the grievance officer on July 17, 2020 and also deemed an emergency (*Id.* at p. 28). In the

---

[2] Defendant Birch argues that this grievance was not fully exhausted because it was received by the ARB outside of the allowed-for timeframe. As the ensuing analysis will show, even if the grievance was received in a timely fashion, the Plaintiff still did not timely exhaust because a July 2020 grievance cannot possibly serve to alert a prison of a problem occurring in 2018 and 2019. And if earliest grievance in the record that was timely filed cannot serve to exhaust the claim against Birch, then none of the later filed grievances can either.

Page 11 of 14

grievance officer's notes, the grievance officer noted that Plaintiff saw Defendant Birch on June 26, 2020 and was scheduled for a follow-up appointment with Defendant Birch in two weeks' time (*Id. at* p. 28).

If the Court counts back ten months from the date of the grievance, which is July 4, 2020, that would put the onset of the issues that Plaintiff is complaining of in September 2019. But the Illinois Administrative Code requires that a grievance must be filed within 60 days of an incident. *See* 20 ILL. ADMIN. CODE § 504.810.[3] So for Plaintiff to grieve issues occurring in September of 2019, he would have need to file the grievance in October or November of 2019. Indeed, filing a timely grievance for anything that occurred in 2019 would require the grievance to be submitted in January or February (or the first or second day of March) in 2020. And even if Plaintiff had done that (he didn't), it would be an uphill battle to show that the grievance relates back to Defendant Birch's actions in 2018 given the language of the Illinois Administrative Code.

Grievances are intended to give prison officials notice of a problem and a chance to correct it before they are subjected to a lawsuit; grievances are not intended to put an individual defendant on notice of a claim against him. *Jones v. Bock*, 549 U.S. 199, 219 (2007) ("We have identified the benefits of exhaustion to include allowing a prison to

---

[3] See 20 ILL. ADMIN. CODE § 504.810, which states, in the relevant part, "An offender may file a written grievance on a grievance form that shall be made available in all living units. Grievances shall be addressed to his or her institutional counselor; however, complaints concerning discipline or sexual abuse shall be sent by the offender directly to the Grievance Officer. A grievance must be filed with the counselor or Grievance Officer in accordance with the procedures in this Subpart, within 60 days after the discovery of the incident, occurrence or problem that gives rise to the grievance. However, if an offender can demonstrate that a grievance was not timely filed for good cause, the grievance shall be considered. Grievances related to allegations of sexual abuse shall not be subject to any filing time limit."

address complaints about the program it administers before being subjected to suit . . . . {E]arly notice to those who might later be sued . . . has not been through to be one of the leading purposes of the exhaustion requirement."). Plaintiff is not required to specifically *name* the Defendants, but he must attribute some actions to them and describe them in the grievance so the Court can identify which Defendants were part of the issues he is grieving. The Court notes that Plaintiff does mention Defendant Birch in later grievances, and she was interviewed by prison officials in response to some of the grievances, but all of these actions took place in 2020, which is just too late to properly grieve issues that happened in 2018.

Exhaustion is an affirmative defense, which the defendants bear the burden of proving. *Pavey*, 663 F.3d at 903 (citations omitted). In this case, Defendant Birch has carried that burden and her motion will be granted.

## Conclusion

Defendant Birch's motion for summary judgment is **GRANTED.** Defendant Birch is **DISMISSED without prejudice** from this action. This matter will continue against the remaining Defendants. The stay on merits-based discovery (*see* Doc. 27) is **LIFTED** and the parties can proceed with discovery on the merits of Plaintiff's claims. A new scheduling order will be entered by separate order.

       **IT IS SO ORDERED.**

       **DATED: August 24, 2022**

                        **s/   Mark A. Beatty**
                        **MARK A. BEATTY**
                        **United States Magistrate Judge**